**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0387n.06
Filed: July 1, 2008

**No. 07-1214**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,

    **Plaintiff-Appellee,**

v.

WILSON ANTWANN DAVIS,

    **Defendant-Appellant.**

                            /

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN

**BEFORE:** **DAUGHTREY, CLAY, and McKEAGUE, Circuit Judges.**

    **CLAY, Circuit Judge.** Defendant Wilson Antwann Davis appeals his conviction and sentence following his entry of a conditional plea of guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and after he reserved the right to appeal the district court's denial of his motion to suppress evidence discovered during a search of his residence. Defendant argues that his conviction should be overturned because the warrantless search of his residence violated the Fourth Amendment. For the reasons stated below, we **AFFIRM** the district court's judgment.

I.

Defendant Wilson Antwann Davis was arrested as a result of a reported instance of domestic violence of which Davis' live-in girlfriend, Chrissy Vines ("Vines"), was the victim. On December 12, 2005, Carmen Vines ("Carmen"), Vines' sister, called 911 and informed the operator that Davis had punched Vines in the eye at 2632 Ninth Street in Muskegon Heights, Michigan. Carmen explained that Vines had come to Carmen's house a few blocks away after the assault occurred. Vines told the operator that Davis was probably still at 2632 Ninth Street and that he was carrying a gun in his pants. Vines suggested that the police approach the house quietly without their lights. She also told the operator that the back door was open and that Davis was probably sleeping.

Officers Lynne Gill and Jimmy Fox responded to the 911 call. Gill spoke with Vines at her sister's house. Vines described the assault and told Gill that when she left the house following the assault, the door was open and Davis was lying on the bed. Fox did not speak directly to Vines, but he was informed by the 911 dispatcher that an assault had occurred at 2632 Ninth Street and that a gun was involved. When Fox arrived at 2632 Ninth Street, Gill radioed that the perpetrator of the assault was still in the house. Fox knocked on the front door and got no response. Fox waited at the front door for three to five minutes until another officer arrived, and following Officer Hansen's arrival, went to the back door of the house. The back door was open, and the officers yelled inside but got no response. Fox and Hansen entered the house to search for the perpetrator of the assault. The officers eventually found Davis asleep in a bedroom and searched him for weapons. After the officers found a gun in Davis' waistband, they arrested him.

On March 30, 2006, Davis was charged in federal district court with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and one count of possessing

a firearm from which the serial number was obliterated in violation of 18 U.S.C. § 922(k). On June 21, 2006, Davis filed a motion to suppress evidence obtained from police officers' December 12, 2005 search of his residence. After the government filed a response to Davis' motion, the district court held a suppression hearing on August 25, 2006. At the hearing, the district court requested supplemental briefing regarding whether Davis' live-in girlfriend could be considered an occupant of the residence such that she could consent to a search of the premises. Following its receipt of supplemental briefing from the government, the district court denied Davis' motion to suppress on August 14, 2006.

On October 2, 2006, Davis entered into a plea agreement with the government. Davis agreed to plead guilty to the felon-in-possession count of the indictment in return for the dismissal of the remaining count. Davis also reserved the right to appeal the district court's denial of his motion to suppress evidence. Pursuant to the plea agreement, Davis entered a guilty plea on October 3, 2006, and he was sentenced to seventy months of imprisonment on January 25, 2007. Davis filed a timely notice of appeal on February 1, 2007.

II.

In reviewing a district court's denial of a motion to suppress, this Court reviews the district court's findings of fact for clear error and its conclusions of law *de novo*. *United States v. Brown*, 449 F.3d 741, 744 (6th Cir. 2006). A factual finding is clearly erroneous if "the reviewing court is left with the definite and firm conviction that a mistake has been made." *Id.* This Court views the evidence "in the light most likely to support the district court's decision." *Id.* (quoting *United States v. Braggs*, 23 F.3d 1047, 1049 (6th Cir. 1994)).

Davis argues that police violated the Fourth Amendment by searching Davis's home without a warrant because Davis himself did not consent to the search and because Vines never explicitly gave police permission to search the residence. The government responds that no Fourth Amendment violation occurred because Davis' consent was unnecessary and because Vines consented to the search of the 2632 Ninth Street residence.

Fundamental to the Fourth Amendment's protection from unreasonable search and seizure is the principle "that searches and seizures inside a home without a warrant are presumptively unreasonable." *Welsh v. Wisconsin*, 466 U.S. 740, 748-49 (1984). However, there are limited exceptions to this general principle. One such exception is made when the search is conducted pursuant to the consent of the subject of the search or the consent of "a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171 (1974). "It is the government's burden, by a preponderance of the evidence, to show through clear and positive testimony that . . . valid and voluntary consent to the search was obtained." *United States v. Worley*, 193 F.3d 380, 385 (6th Cir. 1999) (internal quotation marks and alterations omitted).

Davis argues that although Vines was a co-occupant of the 2632 Ninth Street residence, police violated Davis' Fourth Amendment rights by searching the premises without his permission. Davis cites *Georgia v. Randolph*, 547 U.S. 103 (2006), for support. In *Randolph* the Supreme Court held that police violate the Fourth Amendment by conducting a warrrantless search over the objection of an occupant of a residence even if a co-occupant consents to the search. The Court held that "[s]ince the co-tenant wishing to open the door to a third party has no recognized authority in

law or social practice to prevail over a present and objecting co-tenant, his disputed invitation, without more, gives a police officer no better claim to reasonableness in entering than the officer would have in the absence of any consent at all." *Randolph*, 547 U.S. at 115. As a result, the consent exception to the warrant requirement does not apply in the face of "a physically present inhabitant's express refusal of consent to a police search." *Id.* at 122. However, the Court specified that if the objecting occupant is not present to refuse the search, the Fourth Amendment is not violated by a search conducted pursuant to the consent of a co-occupant. *Id.* at 121 ("[I]f a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out.").

Vines was a co-occupant of Davis' home, and as such had common authority to consent to a search. At the time the search was conducted, Davis was asleep in the house and did not respond to the police officers' request to gain entry. As a result, he was unavailable to object to the search and did not in fact refuse consent.[1] Therefore, if Vines' consent was valid, no Fourth Amendment violation occurred.

Davis also claims that Vines' consent was not valid because she did not explicitly allow police to search the 2632 Ninth Street residence. We have held that "in order to justify a search by

---

[1]Of course, the fact that Davis was not present when Vines consented to the search is not dispositive in this case since Vines was not on the premises, and thus was not contemporaneously granting the police access to the 2632 Ninth Street residence. Instead, had he been awake and expressed objection, Davis would have been able to refuse consent when the officers attempted to gain entrance to the house. *See Randolph*, 547 U.S. at 121-22 (referencing a "physically present inhabitant" and a "potential defendant . . . at the door").

5

consent, the government must prove that the consent was voluntary and unequivocal." *United States v. Buckingham*, 433 F.3d 508, 512 (6th Cir. 2006). A person may express consent to a search "in the form of words, gesture, or conduct." *United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004) (en banc) (quoting *United States v. Griffin*, 530 F.2d 739, 742 (7th Cir. 1976)). As a result, the district court must consider the totality of the circumstances in determining whether valid consent to search was given. *Id.* at 588.

The district court found that Vines consented to the search of the 2632 Ninth Street residence. It reasoned that "although Vines did not say, 'You may enter the house,' her statements to the 911 dispatcher that: (1) Davis was inside the house; (2) the back door was open; and (3) that officers should not put on their lights, could reasonably be interpreted as consent to enter the house." (J.A. 43.) Davis offers no alternative interpretation of Vines' statements, and we find no clear error in the district court's determination that viewed collectively Vines' statements manifested her consent to the search of the 2632 Ninth Street residence.

Because we find that consent was given to search Davis' residence, we **AFFIRM** the district court's denial of Davis' motion to suppress.